**In re KROH BROTHERS DEVELOP-MENT CO., Debtor.**

**KROH BROTHERS DEVELOPMENT CO., et al., Plaintiffs,**

**v.**

**UNITED MISSOURI BANK OF KANSAS CITY, Defendant.**

No. 89-W-207-1.
Adv. No. 89-4035-1-11.

United States District Court,
W.D. Missouri, W.D.

July 31, 1989.

---

Thos. M. Franklin, Timothy J. Sear, Polsinelli, White, Vardeman & Shalton, R. Pete Smith, McDowell, Rice & Smith, Kansas City, Mo., for plaintiffs.

Mendel Small, Scott J. Goldstein, Susan G. Campbell, Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant.

## ORDER

WHIPPLE, District Judge.

Before the court is defendant's motion for leave to appeal and plaintiff's motion to dismiss interlocutory appeal taken by de-

fendants.[1] Defendants (*See* ·Footnote 1, *supra* ) seek appellate review of the Bankruptcy Court's [2] denial of its motion to dismiss and to stay proceedings. Plaintiffs argue that the appeal must be dismissed for failure to obtain certification by the bankruptcy court and, in the alternative, leave to appeal should not be granted because the essential elements for an interlocutory appeal have not been satisfied and therefore defendants' appeal is not justified under the circumstances of this case.

On February 10, 1989, plaintiffs filed the above referenced adversary proceeding in the United States Bankruptcy Court for the Western District of Missouri. On March 23, 1989, defendants filed a motion to dismiss the adversary proceeding for lack of standing. A hearing was held on April 19, 1989 and on May 1, 1989 the Bankruptcy Court overruled defendants' motion to dismiss. 100 B.R. 487. Thereafter, on May 11, 1989, defendants filed a notice of appeal and motion for leave to appeal before this court. Plaintiffs filed this motion to dismiss the interlocutory appeal and also filed opposing suggestions to defendants' motion for leave to appeal. The court will consider plaintiffs' motion to dismiss appeal first.

## MOTION TO DISMISS

■ Plaintiffs contend that dismissal is required because defendants failed to obtain certification from the bankruptcy court. In support thereof, plaintiffs assert that 28 U.S.C. § 158(c), which states that appeals from bankruptcy courts are to be "taken in the same manner as appeals from district courts," mandates that certification is required because appeals taken from the district courts to courts of appeal require certification. Defendants argue that certification by the bankruptcy court with respect to an interlocutory appeal is not required by § 158(c), the Bankruptcy Rules or the majority of cases and therefore the court should deny plaintiffs' motion to dismiss.

Plaintiffs' argument is premised on three cases: *In re United Press International, Inc.*, 60 B.R. 265, 275–76 (Bankr. D.D.C. 1986), *In re Trak Microcomputer Corp.*, 58 B.R. 708, 713 (Bankr.N.D.Ill.1986) and *Connelly v. Shatkin Investment Corp.*, 57 B.R. 794, 796 (N.D.Ill.1986). The rationale used by the district court and two bankruptcy courts cited by plaintiffs in holding that certification by the bankruptcy court is required,[3] is that the "same manner" provision in § 158(c) incorporates the provision found in 28 U.S.C. § 1292(b) which requires certification of interlocutory appeals by the district court to the court of appeals. Hence, because certification by district courts is required by 28 U.C.S. § 1292(b) as to discretionary appeals from interlocutory orders, those courts determined that 28 U.S.C. § 158(c)[4] must similarly require certification by bankruptcy courts for interlocutory appeals as well as

1. In addition to defendant herein, approximately eighty-plus other interlocutory appeals have been filed before this court by similarly situated defendant-creditors in the bankruptcy case. All of these appeals are identical and seek review of the Bankruptcy Court's denial of their Motion to Dismiss for Lack of Standing and Motion to Stay Discovery pending determination of Motion To Dismiss for Lack of Standing, filed May 1, 1989. For simplicity, the Court will hereinafter refer to the defendant or defendants of each case as "defendants" as the court will be entering the identical order in each case disposing of said motions.

2. The Honorable Karen M. See, United States Bankruptcy Judge for the Western District of Missouri.

3. More specifically, the two bankruptcy court decisions cited by plaintiffs have held that certification is required in order to perfect an interlocutory appeal to the district court. The one district court decision relied upon by plaintiffs, *Connelly v. Shatkin Inv. Corp.*, 57 B.R. 794, 796 (N.D.Ill.1986) merely suggests this view. *See In re Bertoli*, 812 F.2d at 139.

4. 28 U.S.C. § 158(a) provides that the District Courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges under § 157. 28 U.S.C. § 158(c) provides that an appeal under subsections (a) or (b) shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

leave of the district court. *In re United Press Intern. Inc.,* 60 B.R. at 275–76; *In re Trak Microcomputer Corp.,* 58 B.R. at 713; *Connelly v. Shatkin Investment Corp,* 57 B.R. at 796.

Defendants argue that certification is not required and that plaintiffs' argument was expressly rejected by the Third Circuit in *In re Bertoli,* 812 F.2d 136, 139 (3rd Cir. 1987), as well as the Sixth Circuit in *In re White Motor Corp.,* 731 F.2d 372, 375 (6th Cir.1984). In addition, four district courts have held that certification of an interlocutory appeal by the bankruptcy court is not required. *See, e.g., Whaley v. United States,* 76 B.R. 95, 96 (N.D.Miss.1987); *First American Bank of New York v. Century Glove, Inc.,* 64 B.R. 958, 962 (D.Del.1986); *First American Bank of New York v. Southwest Gloves,* 64 B.R. 963, 967 (D.Del.1986); *In re Huff,* 61 B.R. 678, 682 and n. 6 (N.D.Ill.1986).

In *In re White Motor Corp.,* the Court ruled that the bankruptcy court can use the certification procedure only in those cases in which the parties do not wish to appeal but the bankruptcy judge, for whatever reason, believes that the issues involved should receive the immediate attention of the district court. *In re White Motor Corp.,* 731 F.2d at 375. The Court held that "[c]ertification is not to be used when, as here the parties want to appeal on their own." *Id.* In fact, with the exception of the two jurisdictions cited by plaintiffs, certification has never been considered necessary and such a requirement has recently been expressly rejected for a number of reasons.

First, the language and structure of § 158 support the conclusion that there is no certification requirement. *In re Bertoli,* 812 F.2d at 139. Subsection 158(a) provides that interlocutory appeals may be had to district courts "with leave of the court." Clearly, the term "court" refers to district courts and the term "judge" refers to bankruptcy judges. The phrase "the district courts" provides the only relevant antecedent for the words "the court." Thus, Congress specifically addressed which court must grant leave for an inter-

locutory appeal—the district court. This court agrees with the analysis of the Third Circuit in *In re Bertoli,* that "[h]aving specifically addressed which court must grant leave for an interlocutory appeal, Congress did not, we believe, intend to amend this provision with the general statement in § 158(c) that all appeals shall be taken 'in the same manner' as civil appeals from district courts to courts of appeals." *Id.* 812 F.2d at 139.

Second, any certification requirement would directly contradict the entire thrust of the 1984 Bankruptcy Code amendments, which expanded the district court's authority over bankruptcy judges. *In re Bertoli,* 812 F.2d at 139. It must be remembered that the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), invalidated many portions of the bankruptcy code as violative of Article III of the Constitution by delegating too much authority to non-Article III bankruptcy judges. To cure this Constitutional defect, the 1984 amendments generally expanded the district court's authority over bankruptcy judges. As stated in *In re Bertoli,*

> We doubt that Congress wished to grant district courts greater authority over bankruptcy judges generally, including the authority to withdraw cases solely on their own judgment, while restricting district courts' authority over interlocutory appeals.

*Id.* 812 F.2d at 139.

Obviously, if certification was required, one of the main purposes of the Bankruptcy Rules, ensuring that litigants can obtain independent review of their bankruptcy claims by an Article III Court, would be defeated. *In re White Motor Corp.,* 731 F.2d at 375.

Third, courts of appeals have typically categorized the district court's authority to consider an interlocutory appeal as a matter of the district court's discretion. *In re Bertoli,* 812 F.2d at 140 (*citing In re Morse Electric Co.,* 805 F.2d 262, 264 (7th Cir. 1986); *In re Ryther,* 799 F.2d 1412, 1212 (9th Cir.1986). "Similarly, the many dis-

trict courts that have discussed the criteria for granting leave to appeal have generally failed to mention even the possibility that certification is required. *E.g., In re Gianakas,* 56 B.R. 747, 749 (N.D.Ill.1985); *In re Hardwicke Companies,* 56 B.R. 244, 246 (S.D.N.Y.1985); *In re Johns–Manville Corp.,* 47 B.R. 957, 960–61 (S.D.N.Y. 1985))." *In re Bertoli,* 812 F.2d at 140. *See also, Whaley v. United States,* 76 B.R. at 96; *First American Bank of New York v. Southwest Gloves,* 64 B.R. at 967; *First American Bank of New York v. Century Glove Inc.,* 64 B.R. at 962; *In re Huff,* 61 B.R. at 682 and n. 6.

Finally, neither the Judicial Conference of the United States nor the Supreme Court have endorsed the contention that § 158 requires certification of an interlocutory appeal by the bankruptcy court. In considering the amendments to Rules 8001 and 8003, the Judicial Conference conformed the wording to the new amendments, but continued to direct motions for leave to appeal to the district court. *In re Bertoli,* 812 F.2d at 140 (*citing* United States Judicial Conference, *Report of Proceedings of Judicial Conference of United States* 67 (Sept. 18–19, 1986)). Likewise, the United States Supreme Court has expressly renewed the validity of Rule 8003. Subsequent to the decisions cited by plaintiffs, the Supreme Court amended Rule 8003 in 1987 and in doing so did not include any requirement that certification by the bankruptcy court is required. *See* Bankruptcy Rule 8003.

Accordingly, this court is persuaded by the rationale set forth in *In re Bertoli, supra,* and the cases cited therein which hold that certification by the bankruptcy court is not required by § 158 with respect

to an interlocutory appeal such as the one before this court.

## LEAVE TO APPEAL

Having concluded that certification is not required in order for defendants to file this interlocutory appeal, the court must next consider whether leave to appeal should be granted. In order to properly determine whether leave should be granted, additional review of the rather complicated factual background of this case is necessary.

Kroh Brothers Development Company and certain related entities [5] (hereinafter "Debtors") filed bankruptcy petitions on and after February 13, 1987. On October 8, 1987, a partnership made up of I.I. Ozar, Frank Morgan and Sherman Drieseszun (hereinafter "Ozar Partnership") and Debtors filed a joint plan of reorganization (hereinafter the "Plan"). The Plan provided that Ozar Partnership was to be appointed, pursuant to 11 U.S.C. § 1123(b)(3)(B), as a "representative of the estate" of Debtors for purposes of prosecuting various causes of action provided for in the United States Bankruptcy Code. In addition, the Plan assigned the Debtors' avoidance powers and actions to the Kroh Operating Limited Partnership (hereinafter "KOLP"), a limited partnership in which Debtors and the Ozar Partnership each have a 50% interest. Ozar Partnership is the Managing Agent for KOLP.[6]

On November 7, 1987, the Debtors' Creditors' Committee unanimously voted to recommend the plan to all unsecured creditors of the Debtors. Subsequently, 89% of the voting unsecured creditors voted to accept the plan. On March 8, 1988, the Bankruptcy Court entered its Findings of Fact and Conclusions of Law and Order Confirming

---

**5.** In addition to Kroh Brothers Development Company, the debtors include Kroh Brothers Equity Company, Kroh Brothers Realty Company, Kroh Investments I, Inc., Kroh Telecommunities, Inc., and Ward Parkway Corp.

**6.** Specifically, § 8.2 of the Plan provides:

8.2 *Creation of the Operating Partnership.* On the Effective Date, Debtors and the Ozar Partnership shall create the Operating Partnership [KOLP] in accordance with Missouri State law. Debtors shall transfer and assign

to the Operating Partnership all of the Remaining Assets and the Causes of Action, except those Causes of Action relating to the Ozar Partnership or its Affiliates and Causes of Action relating to the Designated Trust Assets. All Assets and Causes of Action transferred to the Operating Partnership shall be held, administered, liquidated, and distributed by the Managing Agent pursuant to the terms of this Plan and the Partnership Agreement.

the Plan of Reorganization proposed by the Ozar Partnership and Debtors, and appointed Ozar as "representative of the estate" for purposes of prosecuting bankruptcy causes of action. No appeal was taken by any entity.

On and after February 10, 1989, the Debtors, the Segregated Fund Trustee and the Ozar Partnership commenced various adversary proceedings against defendants seeking to recover properties and sums of money pursuant to the provisions of the Bankruptcy Code. Specifically, Debtors and Ozar Partnership sued defendants seeking to avoid various allegedly fraudulent and/or preferential transfers. The defendants filed motions to dismiss the adversary proceedings based upon the claim that Debtors and the Ozar Partnership lacked standing to pursue the actions. Defendants' main claim was the Ozar Partnership was a self-appointed "stranger" to the bankruptcy proceeding with no authority of a debtor or trustee to prosecute the actions.

On May 1, 1989, the Bankruptcy Court entered its well-reasoned opinion denying the Motion to Dismiss for Lack of Standing and Motion to Stay Discovery pending determination of Motion to Dismiss. The Court found that the Plan specifically appointed Ozar Partnership as an 11 U.S.C. § 1123(b)(3)(B) "representative of the estate" with standing to prosecute the causes of action against defendants. Thereafter, this motion for leave for interlocutory appeal was filed May 15, 1989.

■ Pursuant to 28 U.S.C. § 158(a), the district court is granted jurisdiction to hear "... appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title ..." While neither § 158(a) nor the Bankruptcy Rules provide any specific standards for evaluating interlocutory appeals, district courts typically utilize the standards that govern appeals of interlocutory orders from district courts to courts of appeal pursuant to 28 U.S.C. § 1292(b). Thus, the standard adopted for determining whether to grant leave for an interlocutory appeal is: (1) whether the issue involves a controlling issue of law; (2) whether there is substantial ground for difference of opinion on that issue of law; and (3) whether an immediate appeal from the order will materially advance the ultimate termination of the litigation. *In re Johns–Manville Corp.*, 45 B.R. 833, 835 (Bankr.S.D.N.Y. 1984). Indeed, those district courts which have addressed similar, if not identical issues, typically treat such appeals as interlocutory in nature. *See Amarex, Inc. v. Marathon Oil Co. (In re Amarex, Inc.)*, 88 B.R. 362, 363 ((W.D.Okla.1988); *In re Sweetwater*, 55 B.R. 724, 725 (D.Utah 1985).

Defendants contend that all three essential elements have been satisfied for the taking of this interlocutory appeal. Plaintiffs agree that (1) the "standing" issue involves a controlling issue of law. However, plaintiffs contend that (2) there is *no* substantial ground for difference of opinion on the standing issue; and (3) that an immediate appeal will *not* materially advance the ultimate termination of the litigation.

Defendants claim that "the Bankruptcy Court's ruling that [plaintiffs] have standing to maintain this adversary action, when neither is a trustee or debtor-in-possession, is contrary to the overwhelming weight of case law (22 cases) in this and other jurisdictions."[7] Motion for Leave to Appeal, at

---

7. Of the 22 cases cited by defendant, plaintiff asserts that none of them deal with § 1123(b)(3)(B) "representatives" and they are therefor inapplicable. In response, defendant notes that plaintiffs statement is inaccurate and that two of the twenty-two cases cited expressly dealt with Chapter 11 plans in which there was an attempt to rely on § 1123(b)(3)(B) to justify transfer of the avoiding powers. *See In re*

*Sweetwater,* 55 B.R. 724 (D.Utah 1985) and *In re Morning Treat Coffee Co. Inc.,* 77 B.R. 62 (Bankr.M.D.La.1987). The Bankruptcy Court below properly analyzed the caselaw presented and distinguished the rationale and purpose of the language relied upon in these cases by defendants. Memorandum Opinion and Order Denying Defendant's Motion to Dismiss for

page 4. However, defendants' argument is not well-taken.

Under the circumstances of this case, defendants' contention that plaintiffs do not have standing to maintain the adversary proceedings because neither is a trustee or debtor in possession, is completely contradicted by the clear statutory language of § 1123(b)(3)(B), which permits these actions to be brought by "representatives of the estate", rather than only debtors or trustees, and by established caselaw concerning § 1123(b)(3)(B) which stands for the proposition that "representatives of the estate" may prosecute such causes of action.[8]

■ Recent caselaw on this precise issue has developed which unequivocally holds that a provision of a plan authorizing someone other than a trustee or a debtor to conduct adversary proceedings to recover transfers under Bankruptcy Code § 547 or assigning these adversary proceedings to such a person is not inconsistent with any applicable provision of the Code and may be included in a debtor's plan under Code § 1123(b)(5). *In re Xonics*, 63 B.R. 785, 788 (Bankr.N.D.Ill.1986); *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177 (11th Cir.1987); *Southern Commodity Corporation Official Liquidating Committee v. El Campo Rice Milling Co., Inc. (In re Southern Commodity Corp.)*, 78 B.R. 626 (Bankr.S.D.Fla.1987); *Perlstein v. Saltzstein (In re AOV Industries, Inc.)*, 62 B.R. 968 (Bankr.D.C.1986); *In re Amarex*, 88 B.R. 362 (Bankr.W.D.Okla. 1988); *Temex v. Hastie and Kirschner (In re Amarex)*, 96 B.R. 330 (W.D.Okla.1989).

For example, one court referred to the caselaw cited by defendants (which suggests that such plaintiffs are not the proper party to bring an action to recover the alleged preference given to the respective defendant) as "archaic." *In re Xonics*, 63 B.R. at 787. The court noted:

The court uses the term "archaic" advisedly for it is of the opinion that these defendants have not given proper consideration to the import of the Bankruptcy Reform Act of 1978, as amended, on Congress's intent to permit a business to restructure its finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its shareholders. *Id.* at 787. The court concluded:

This court concludes that the proceeds of recoveries under the avoiding transfer concepts, including those under § 547, may be distributed under a chapter 11 plan and that exercises of these avoiding transfer concepts may be by someone other than a trustee or a debtor.

... A provision of a plan authorizing someone other than a trustee or a debtor to conduct adversary proceedings to recover transfers under § 547 or assigning these adversary proceedings to such a person is not inconsistent with any applicable provision of the code and may be included in a debtor's plan under Code § 1123(b)(5).

*Id.* at 788.

The practical import of appointment of an agent to conduct adversary proceedings at such junctures of the bankruptcy proceeding is clear. As noted in *In re Amarex, Inc.*, 74 B.R. 378, 380–81 (Bankr.W.D. Okla.1987),

As Judge Bare points out in [*DuVoisin v. East Tennessee Equity Ltd.*] [ (*In re* ] *Southern Industrial [Banking Corp.*), 59 B.R. 638 (Bankr.E.D.Tenn.1986)], § 1123(b)(3)(B) serves the useful function of allowing confirmation of a plan before possible claims against others have been fully investigated and pursued. To say confirmation must await a final decision of all possible preference complaints would either inordinately delay confirmation, with all the attendant expense, or

---

Lack of Standing and Denying Motion for Stay of Proceedings, pages 18–20.

**8.** 11 U.S.C. § 1123 (1979) provides, in relevant part:

"(b) A plan may ...

(3) provide for—
(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest ...."

result in a windfall in favor of those who received preferential transfers.

In a major case, such as this one, the time spent investigating, preparing, trying and appealing preference complaints could take many years. ....

\* \* \* \* \* \*

If reorganization were required to await such a lengthy period one of two results would likely obtain. Either the creditors would be required to wait an additional 5 or 6 years to receive a distribution, which would likely be substantially less, if anything, due to continuing costs of administration, or the debtor in possession would choose to forego preference claims in order to seek plan confirmation. Both results would be intolerable. The first would result in mindless delay which Congress obviously sought to avoid and the second would condone windfalls to some creditors and a disproportionate distribution of the estate. Both these results are contrary to the very purpose of the Bankruptcy Code which strives to achieve the maximum distribution in the minimum time with all creditors of the same class sharing ratably. *Katchen v. Landy*, 382 U.S. 323, 328–29, 86 S.Ct. 467, 471–73, 15 L.Ed.2d 391 (1966); *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941).

*Id.* Here, plaintiffs note that the process presently underway, of which defendants complain, is exactly the process which these defendant-creditors chose in that most of the defendants voted in favor of the plan appointing Ozar Partnership as "representative of the estate." In response thereto, many of the individual defendants have stated:

This Defendant was a creditor at the time the voting took place on the Plan, and this Defendant was unaware of any plan by Plaintiffs to attack this Defendant and attempt to take back monies earned by this Defendant as an employee of the Kroh entities. At the hearing on April 19, 1989, Plaintiffs testified through Gregory Galvin that to his knowledge none of the Defendants had been served with any demand letter or lawsuit at the time the voting for the Plan was taking place. (Transcript, pages 91–92). Had this Defendant been aware of any demand letter or lawsuit by Plaintiffs against this Defendant, this Defendant would not have voted for the Plan.

*Defendant's Reply to Plaintiffs' Response in Opposition to Motion For Leave to Appeal "Standing" Issue*, page 3.

In this case an "appointment" within the contemplation of § 1123(b)(3)(B) clearly occurred and the provisions of the reorganization Plan expressly authorized the same. The Bankruptcy Court determined that the avoidance powers were retained rather than assigned. As stated by the Bankruptcy Court:

It is true, as defendant asserts, that there is a long line of cases either holding that the avoiding powers cannot be transferred to a single creditor or group of creditors for their sole benefit, or in which a single creditor or group of creditors was denied the right to pursue preference or fraudulent conveyance actions because the court held that only a trustee or debtor in possession could exercise those powers. [Footnote, citing said cases, omitted]. These cases are easily distinguishable from the case at bar either factually or because they involved the transfer of the avoidance powers rather than their retention pursuant to § 1123(b)(3)(B).

*Order Denying Motion to Dismiss and to Stay Discovery*, pp. 31–32.

Upon review of the caselaw, this court agrees with the analysis of the Bankruptcy Court that the cases cited by the defendants are simply not on point and do not evidence a "substantial ground for difference of opinion" as required in order for an interlocutory appeal to go forward.

Finally, two other grounds for denial of this interlocutory appeal exist. First, if this court grants leave to appeal and affirms the bankruptcy court's order, which appears more likely than not, a remand to the bankruptcy court would be required as the court of appeals has no jurisdiction to

hear the interlocutory appeal. 28 U.S.C. § 158(d). *Matter of Fox*, 762 F.2d 54, 55 (7th Cir.1985); *In re Ryther*, 799 F.2d 1412, 1414 (9th Cir.1986); *In re Stanton*, 766 F.2d 1283, 1287 (9th Cir.1985). Assuming that the plaintiffs prevail at trial, another appeal of the "standing" issue, along with the rest of the case, would follow to the district court, and then to the court of appeals. Thus, this interlocutory appeal improperly invites two appeals of the same issue to this court.

In the alternative, a determination by this court that plaintiffs have no standing to bring these cases may not dispose of these cases. Plaintiffs have contended that the defendants are precluded, as a matter of law, from being permitted to raise the standing issue at this point. Indeed, as argued by plaintiffs, the Bankruptcy Court's order of confirmation appointed Ozar Partnership as the § 1123(b)(3)(B) "representative of the estate" with standing to pursue these adversary actions and as such, the issue raised by defendants goes to the very propriety of legality of the Bankruptcy Court confirmation order and must be addressed on direct appeal from that order. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1052 (5th Cir. 1987); *In re Amarex, Inc.*, 74 B.R. 378, 381 (Bankr.W.D.Okla.1987). Plaintiffs argue that none of the defendants chose to take such an appeal and are foreclosed from raising it now.

Although the Bankruptcy Court found it unnecessary to rule on the preclusion issue, if this court determines that Ozar Partnership is not a proper § 1123(b)(3)(B) "representative of the estate", this case will have to be remanded to the Bankruptcy Court for factual development of the preclusion claim made by plaintiffs. Obviously, given either of the above possible situations, allowance of defendant's interlocutory appeal would result in the sort of piecemeal litigation that is abhorred by the courts as a waste of judicial economy. Thus, leave to file interlocutory appeal is the exception, rather than the rule and should be granted only where circumstances are present which justify overriding the general policy of not allowing such appeals. Indeed, because interlocutory appeals interfere with the cumulative goal of the bankruptcy system, expeditious resolution of pressing economic difficulties, they are not favored. *In re Hunt International Resources Corp.*, 57 B.R. 371, 372 (N.D.Tex.1985).

Accordingly, it is

ORDERED that plaintiffs' motion to dismiss interlocutory appeal is denied as herein provided; it is further

ORDERED that defendant's motion for leave to appeal is denied as herein provided.