# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued April 16, 2013          Decided May 28, 2013

No. 12-5095

SIERRA CLUB,
APPELLEE

v.

UNITED STATES DEPARTMENT OF AGRICULTURE,
RURAL UTILITIES SERVICE, ET AL.,
APPELLEES
SUNFLOWER ELECTRIC POWER CORPORATION,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01860)

---

*Sharon M. Mattox* argued the cause for appellant Sunflower Electric Power Corporation. With her on the briefs were *Thomas S. Meriwether*, *Carol Dinkins*, and *N. Beth Emery*.

*Amanda W. Goodin* argued the cause for appellee Sierra Club. With her on the brief were *Kristen L. Boyles* and *Jan Hasselman*.

*Brian C. Toth*, Attorney, U.S. Department of Justice, argued the cause for appellee U.S. Department of Agriculture. With him

on the brief was *Andrew R. Varcoe*, Attorney, U.S. Department of Agriculture.

Before: GARLAND, *Chief Judge*, and ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Intervenor Sunflower Electric Power Corporation appeals the grant of summary judgment to the Sierra Club based on violations of the National Environmental Policy Act by the U.S. Department of Agriculture's Rural Utilities Service. The district court ruled that the Service unlawfully failed to prepare an environmental impact statement ("EIS") before granting approvals and financial assistance to Sunflower's expansion of its coal-fired power plant, and remanded the matter to the Service, enjoining it from granting further approvals until it completed an EIS. We dismiss the appeal for lack of jurisdiction. This court lacks jurisdiction under 28 U.S.C. § 1291 because Sunflower appeals a non-final remand order that is not immediately appealable by a private party. This court lacks jurisdiction under § 1292(a)(1) because the injunction serves no purpose beyond the remand.

## I.

The Rural Electrification Act, 7 U.S.C. §§ 902(a), 904, authorizes the Secretary of Agriculture to make loans for improving electric service in rural areas by financing the construction and operation of power plants. Pursuant to the Secretary's delegation of authority, the Service — then known as the Rural Electrification Administration — provided more than $540 million in loans and loan guarantees to Sunflower Electric Cooperative, Inc. ("Old Sunflower") in 1980, for the construction of a coal-fired power plant near Holcomb, Kansas.

Before granting the loan and loan guarantees, the Service prepared an EIS for the coal-fired plant in accord with the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C), which requires an EIS for any "major Federal actions significantly affecting the quality of the human environment." A "major Federal action" is defined to include "projects and programs entirely or partly financed, assisted, . . . or approved by federal agencies." 40 C.F.R. § 1508.18(a).

As of 2002, Old Sunflower still owed hundreds of millions of dollars and had little prospect of making appreciable payments. That year the Service consented to a debt settlement and corporate restructuring pursuant to the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1981(b)(4), which authorizes the adjustment, modification, or release of prior loan agreements. As part of the restructuring, a newly organized Sunflower Electric Power Corporation ("Sunflower") acquired most of Old Sunflower's assets by issuing promissory notes to its creditors, including the Service. The 2002 restructuring enabled Sunflower to pursue developing additional power plants at the Holcomb site, but required Sunflower to obtain written approval from the Service before taking certain actions related to the expansion.

Between 2005 and 2007, the Service approved a series of agreements between Sunflower and others to develop three new coal-fired power plants at the Holcomb site. In October 2007, however, the State of Kansas denied an air quality permit for the expansion project on the ground that new coal-fired plants would harm human health and the environment by contributing to global warming. In 2009 Sunflower negotiated a settlement agreement with Kansas to allow an expansion project of a single coal-fired plant. Sunflower has neither sought nor obtained the Service's approval of the 2009 settlement agreement.

Also in October 2007, the Sierra Club sued the Service and Agriculture Department officials (together, "the Service"), alleging that they violated the National Environmental Policy Act by failing to prepare an EIS before approving the 2002 restructuring and subsequent agreements related to the expansion project. Sunflower intervened by right as a defendant pursuant to Federal Rule of Civil Procedure 24(a). The district court granted summary judgment to the Sierra Club, concluding that the Service's decisions to provide necessary approvals and financial assistance for the expansion project constituted "major Federal actions" requiring an EIS under 42 U.S.C. § 4332(2)(C) and 40 C.F.R. § 1508.18. *Sierra Club v. Dep't of Agric.* ("*Sierra Club I*"), 777 F. Supp. 2d 44, 57–64 (D.D.C. 2011).

At the Service's request, the district court ordered additional briefing on the appropriate remedy, *id.* at 68, and, upon review thereof, granted declaratory and limited injunctive relief. *Sierra Club v. Dep't of Agric.* ("*Sierra Club II*"), 841 F. Supp. 2d 349, 352, 364 (D.D.C. 2012). The district court denied the Sierra Club's and the Service's requests that Sunflower be ordered to seek Service approval of the 2009 settlement agreement, as neither that agreement nor the continuing validity of the earlier 2007 approvals were before the district court, *id.* at 357. It also denied the Sierra Club's request that Sunflower be enjoined from commencing construction or entering other arrangements for the expansion project, *id.* at 360–62. Instead, the district court enjoined the Service from issuing any further "approvals or consents for agreements or arrangements directly related to," or taking "any other major federal actions in connection with," the expansion project without first completing an EIS. *Id.* at 360. With the injunction, and the Service's "emphatic conclusion that Sunflower must seek additional approvals" from it before the expansion project could proceed, *id.* at 362, the district court concluded that there was no need to vacate the 2002 restructuring or 2007 approvals. *Id.* at 362–63. The

district court remanded the matter to the Service "to determine what further action, if any, is necessary." *Id.* at 364.

The Service and Sunflower timely appealed, but the Service abandoned its appeal and moved to dismiss Sunflower's appeal for lack of jurisdiction.

## II.

"Because this court may not proceed without appellate jurisdiction, we must address the motion to dismiss before considering the arguments on the merits." *Pueblo of Sandia v. Babbitt*, 231 F.3d 878, 880 (D.C. Cir. 2000) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

### A.

"The jurisdiction of a Court of Appeals under 28 U.S.C. § 1291 extends only to 'appeals from . . . final decisions of the district courts.'" *Ortiz v. Jordan*, 131 S. Ct. 884, 891 (2011) (quoting 28 U.S.C. § 1291). "It is black letter law that a district court's remand order is not normally 'final' for purposes of appeal under 28 U.S.C. § 1291." *N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 19 (D.C. Cir. 2008); *Pueblo of Sandia*, 231 F.3d at 880. This rule promotes judicial economy and efficiency by avoiding the inconvenience and cost of two appeals: one from the remand order and one from a later district court decision reviewing the proceedings on remand. *Pueblo of Sandia*, 231 F.3d at 880 (citing *In re St. Charles Preservation Investors, Ltd.*, 916 F.2d 727, 729 (D.C. Cir. 1990)). It also leaves open the possibility that an appeal may prove unnecessary if the remanded proceedings satisfy all parties. *Id.*

"[T]here is a limited exception permitting a government agency to appeal immediately [from a remand order under § 1291], but that path is not normally available to a private

party." *N.C. Fisheries Ass'n*, 550 F.3d at 19–20 (internal citations omitted); *N. Air Cargo v. USPS*, 674 F.3d 852, 857 (D.C. Cir. 2012); *Am. Hawaii Cruises v. Skinner*, 893 F.2d 1400, 1402 n.\* (D.C. Cir. 1990). The reason for this asymmetry is that a government agency cannot later challenge its own actions complying with a remand order, whereas a private party dissatisfied with the action on remand may still challenge the remanded proceedings — as well as the remand order requiring them — after the proceedings are complete. *See Lakes Pilots Ass'n, Inc. v. U.S. Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004); *NAACP v. U.S. Sugar Corp.*, 84 F.3d 1432, 1436 (D.C. Cir. 1996); *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 330–32 (D.C. Cir. 1989).

The collateral order doctrine, invoked by Sunflower, is a "practical construction" of § 1291, *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994), that allows appeal of a "small category" of rulings "that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)). Sunflower maintains that its appeal fits within the doctrine because the district court conclusively ruled that certain Service actions qualified as major federal actions requiring an EIS, and its interests "'will be irretrievably lost in the absence of an immediate appeal,'" Appellant's Br. at 18–19 (quoting *Occidental*, 873 F.2d at 329). The Supreme Court, however, has repeatedly emphasized the narrow and modest scope of the collateral order doctrine, *see Will v. Hallock*, 546 U.S. 345, 350 (2006), which "must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered,'" *Mohawk*, 558 U.S. at 106 (quoting *Digital Equip. Corp.*, 511 U.S. at 868). This court, in turn, has consistently

declined invitations to apply the doctrine to private-party appeals from remand orders. *See N.C. Fisheries Ass'n*, 550 F.3d at 20 n.5; *Lakes Pilots Ass'n*, 359 F.3d at 625; *Am. Hawaii Cruises*, 893 F.2d at 1403. We decline Sunflower's invitation to extend the collateral order doctrine here.

Sunflower fails to cite a single case in its favor and neither establishes that the district court resolved important questions separate from the merits, nor demonstrates that the district court's decision will be unreviewable in a future appeal. For example, if the Service imposes environmental conditions on the expansion project and ultimately withholds additional approvals on environmental grounds, Sunflower can appeal and renew its argument that the Service lacks such authority. Or if the Service grants additional approvals and the Sierra Club or another plaintiff challenges the EIS as inadequate, then Sunflower can intervene as of right and, if the plaintiff prevails, argue on appeal that the adequacy of the EIS is irrelevant because the Service's minor approvals over the years did not constitute, by accumulation, "major Federal actions" under 42 U.S.C. § 4332(2)(C). The remanded proceedings may, "as a practical matter," prevent Sunflower from raising some of its objections to the district court's decision in a subsequent appeal, but "the mere identification of some interest that would be 'irretrievably lost' has never sufficed" to invoke the collateral order doctrine, *Digital Equip. Corp.*, 511 U.S. at 872, and Sunflower's contention is not "an appealing prospect for adding to it," *id*. at 871. To the extent Sunflower objects that, even if it ultimately receives the approvals it seeks, it will have been injured by the "cost and delay" resulting from the Service's preparation of an EIS, Reply Br. 3, the Supreme Court has instructed that "the strong bias of § 1291 against piecemeal appeals almost never operates without some cost." *Id.* at 872. And this court has recognized that although § 1291 inevitably results in some delay, "Congress has determined that such delay must be

tolerated." *Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258, 1261 (D.C. Cir. 2012).

Both the Ninth and Eighth Circuits have held that a district court order remanding for preparation of an EIS does not constitute a "final decision" appealable by a private party under the collateral order doctrine or 28 U.S.C. § 1291 more generally. *See Pit River Tribe v. USFS*, 615 F.3d 1069, 1074–77 (9th Cir. 2010); *Izaak Walton League of America v. Kimbell*, 558 F.3d 751, 762–63 (8th Cir. 2009). The reasoning of those cases applies here. As in *Pit River Tribe*, 615 F.3d at 1076, Sunflower "will have an opportunity to participate in the [Service's environmental review] processes on remand," and if the Service grants Sunflower the approvals it seeks, then "any decision by this court may prove entirely unnecessary." Although, as Sunflower notes, the Ninth Circuit allowed a private-party appeal in *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161 (9th Cir. 2011), the circumstances of that case do not apply here. In *Sierra Forest Legacy*, a remand was ordered to cure a deficiency in an EIS, the agency prepared a draft supplemental statement before the appeal was heard, and the appellant maintained that neither the district court order nor the draft supplemental EIS addressed the alleged violations, *id.* at 1174–75. On these unique facts, the Ninth Circuit distinguished *Pit River Tribe* and concluded that the remand order was effectively final under § 1291 because "the work of both the district court and the agency is complete." *Id.* at 1176. The same is not true here.

As an alternative basis for jurisdiction under § 1291, Sunflower contends that the remand order is final because it leaves "nothing for [the Service] to do." Appellant's Br. 16. "[S]everal courts, including this one, have noted that remand orders may be considered final where a court remands for solely 'ministerial' proceedings." *Pueblo of Sandia*, 231 F.3d at 881. Sunflower relies on *Skagit County Public Hospital Dist. No. 2*

*v. Shalala*, 80 F.3d 379, 384 (9th Cir. 1996), and *Ringsby Truck Lines, Inc. v. United States*, 490 F.2d 620, 624 (10th Cir. 1974). In those cases, however, further agency action on remand was effectively precluded, whereas here the Service may prepare an EIS and consider additional approvals related to the expansion project. If Sunflower attempts to commence construction on the expansion project without obtaining additional Service approval, then the Service may seek to enjoin construction based on breach of contract, *see Sierra Club II*, 841 F. Supp. 2d at 357. Each of these actions would entail significant discretion on the part of the Service. Thus, as in *Pueblo of Sandia*, 231 F.3d at 881, "the district court's remand order contemplates more than [a] ministerial act."

In sum, Sunflower's contentions "do[] not hold up under the broad scrutiny to which all claims of immediate appealability under § 1291 must be subjected," *Digital Equip. Corp.*, 511 U.S. at 871, and, for the following reasons, its invocation of § 1292(a)(1) also fails under our precedent.

**B.**

One statutory exception to the "final decision" requirement is § 1292(a)(1), which permits appeal from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions." "Because § 1292(a)(1) was intended to carve out only a limited exception" to the general policy against piecemeal review, the Supreme Court has "construed the statute narrowly," *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981), and approached it "somewhat gingerly lest a floodgate be opened," *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 24 (1966). This court, while acknowledging that articulating the scope of § 1292(a)(1) is "resistant to brief summary," has explained that if a district court order "clearly grant[s] or den[ies] a specific request for injunctive relief . . . it falls within the plain text of § 1292(a)(1)

and is appealable without any further showing." *Salazar*, 671 F.3d at 1261 (internal quotation marks omitted). And even if the terms of the order do not grant or deny a specific request for an injunction, the order may still be appealable if it has the "practical effect" of doing so. *Id.* (quoting *Carson*, 450 U.S. at 83). At the same time, our precedent instructs that, for purposes of determining whether a district court order is immediately appealable, entry of a specific remedy does not always change the overall character of the order as a remand. *See Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011–12 (D.C. Cir. 1999). In such instances, this court will "construe [the district court's order] as a remand . . . and ignore, for jurisdictional purposes, its later order on specific relief." *Id.* at 1012; *see also N. Air Cargo*, 674 F.3d at 857.

The district court granted some of the injunctive relief requested by the Sierra Club and the Service. *See Sierra Club II*, 841 F. Supp. 2d at 357–60. It enjoined the Service from issuing "any approvals or consents for agreements or arrangements directly related to the Holcomb Expansion Project, or [taking] any other major federal actions in connection with the Holcomb Expansion Project, until an EIS is complete." *Id.* at 360, 363–64. Sunflower consequently maintains that the district court decision is appealable as an interlocutory order under § 1292(a)(1). Nonetheless, the Service contends that the limited injunction, which is directed against the Service rather than Sunflower, does not provide a basis to review Sunflower's appeal under § 1292(a)(1). Relying on *County of Los Angeles*, the Service maintains that "[a]n injunction like the one here that does nothing more than provide more detail to the parameters of a remand order is, in substance, treated as a remand for purposes of Section 1291 and thus is not immediately appealable by a private intervenor." Gov't Resp. Br. 11.

The district court declined to vacate the Service's prior approvals or to enter an injunction against Sunflower. *See Sierra Club II*, 841 F. Supp. 2d at 361–63. Instead, it granted declaratory relief, entered a limited injunction against the Service, and remanded the matter to the Service for further proceedings. *See id.* at 363–64. Notably, the Service had requested the injunctive relief in its supplemental briefing in the district court. *See id.* at 359–60 & n.8. At the time, the Service was still contesting the district court's grant of summary judgment to the Sierra Club for failure to prepare an EIS and planned to appeal, but wanted to ensure that the expansion project did not commence until any necessary EIS had been completed. On appeal, the Service has acquiesced in the merits. At oral argument, its counsel agreed that, pursuant to the judgment of the district court, the Service must prepare an EIS if Sunflower seeks additional approvals for the expansion project, and committed that the Service would do so on remand even absent the injunction. Oral Arg. Recording at 32:50-33:33. (Neither the Sierra Club nor Sunflower suggest that those representations were made in bad faith.) Consequently, the Service maintains that the injunction serves no additional purpose beyond the remand order.

In a similar case, the Eighth Circuit held that it lacked jurisdiction under § 1292(a)(1) where a defendant-intervenor, rather than the defendant agency, sought to appeal a district court order enjoining the agency from taking further action until it prepared an EIS. *See Izaak Walton League*, 558 F.3d at 763. Here, as in that case, "[e]ven if the district court had not granted [injunctive] relief, or if this court now vacated the injunction," the Service could still withhold further approvals for Sunflower's expansion project until completion of an EIS. *Id.* Allowing Sunflower's private-party appeal from the remand order, based on a limited injunction entered against the Service, would be to permit an end run around the § 1291 finality

requirement and the "general congressional policy against piecemeal review." *Carson*, 450 U.S. at 84.

Accordingly, because the injunction against the Service serves no function beyond the remand order, and pursuant to *County of Los Angeles* this court must ignore the injunction for jurisdictional purposes, we dismiss Sunflower's appeal for lack of jurisdiction. We thus can express no position on the merits of the injunction or Sunflower's contention that the Sierra Club's case was moot when filed. "If we lack jurisdiction, we cannot vacate the district court's order for lack of jurisdiction because we lack the power to do so." *Defenders of Wildlife v. Perciasepe*, ___ F.3d ___, 2013 WL 1729598, at *8 (D.C. Cir. April 23, 2013).